B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT    Western District of Oklahoma | PROOF OF CLAIM |
|---|---|

Name of Debtor:
Juan Pablo Valdez

Case Number:
24-12446

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Humberto Trejo

☑ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:

Cody Kerns, Esq., Teague & Wetsel, PLLC, 1741 W 33rd St., Ste. 120
Edmond, OK 73013

Court Claim Number: 16-1
(*If known*)

Telephone number:
(405) 285-9200

Filed on: 11/08/2024

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:**    $   68,907.53

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** Lawsuit
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____

   3a. **Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**   ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
**Describe:**

**Value of Property:** $_____  **Annual Interest Rate** ____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**
**if any:** $_____   **Basis for perfection:** _____

**Amount of Secured Claim:** $_____   **Amount Unsecured:** $_____

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☑ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$   2,000.00

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

Date:
11/22/2024

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*[signature: Cody Kerns]*

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (12/07) – Cont.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## _____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## _____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

Humberto's Trejo's Itemized Statement of Interest and Charges

| First Judgment | | Second Judgment | |
|---|---|---|---|
| Principal Amount | $10,273.89 | Principal Amount | $5,794.92 |
| Attorney Fees | $28,870.09 | Attorney Fees | $16,286.41 |
| Costs | $104.71 | Costs | $59.07 |
| Accrued Post-Judgment Interest on Principal, Attorney Fees, and Costs[1] | $86.00 | Post-Judgment Interest on Principal, Attorney Fees, and Costs[2] | $48.48 |
| Pre-Judgment Interest | $5,383.96 | Pre-Judgment Interest | $1,843.86 |
| **Total Amount** | **$44,718.65** | **Total Amount** | **$24,188.88** |
| Plus Accruing Interest on Principal, Attorney Fees, and Costs | 10% yearly | Plus Accruing Interest on Principal, Attorney Fees, and Costs | 10% yearly |
| Plus Attorney Fees, Costs, and Interest awarded in this proceeding | TBD | Plus Attorney Fees, Costs, and Interest awarded in this proceeding. | TBD |
| GRAND TOTAL: $68,907.53 plus certain accruing interest on outstanding attorney fees, costs, and interest; plus undetermined attorney fees, costs, and interest awarded in this proceeding. | | | |

---

[1] Accrues on outstanding principle, interest, and costs at 10% per year starting November 14, 2024.
[2] *Id.*

[Exhibit 5, Page 3 of 19]

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JUL 17 2024

RICK WARREN
COURT CLERK

111 _____

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

Humberto Trejo Dominguez,
Plaintiff (real party in interest),

Kruger Investment Company,
(prior Plaintiff)

v.

JUAN PABLO VALDEZ and MRS. JUAN
PABLO VALDEZ, ex-spouse of Juan Pablo
Valdez, if any; and Mr. and Mrs. John Doe,
occupants of 515 S.W. Grand Blvd.,

Defendants.

Case No. CJ-2020-547
Judge Anthony L. Bonner

## JOURNAL ENTRY OF JUDGMENT
### (On Summary Judgment)

On July 17, 2024, this case came for hearing before this Court the Plaintiff Humberto Trejo's Motion for Summary Judgment, filed on June 06, 2024 by Plaintiff, Humberto Trejo ("Trejo"). Trejo appears through his attorney of record, Cody D. Kerns. Defendant Juan Pablo Valdez ("Valdez") did / **did not** appear for this hearing, either in person or through an attorney of record. The Court, upon reviewing the evidence in the record and the court file, finds:

1. All parties are properly before this Court, jurisdiction and venue being proper, and this case is now at issue. The subject property in this case is located wholly in Oklahoma County. Valdez was properly served with process, all in accordance with state and federal statutory requirements and state and federal standards of due process. Valdez was served on February 10, 2020, and on April 10, 2020, via private process server and was ordered to answer or otherwise plead. Valdez has not entered an appearance, either general or special in this case. Further, Valdez has failed to file a legally sufficient answer, motion or other pleading which would extend the time for Valdez to answer. The time for filing an answer has expired and Valdez is in default.

1

[Exhibit 5, Page 4 of 19]

2. Valdez has not filed an answer of record or any response to Plaintiff Humberto Trejo's Motion for Summary Judgment. Valdez did file a Suggestion of Bankruptcy on October 28, 2021. The Suggestion of Bankruptcy does not meet the legal requirements of an answer, and thus does not cure any default on Valdez's part. Furthermore, Valdez did not ask permission to file an answer out of time, and thus the Suggestion of Bankruptcy is a nullity. Substantively, the Suggestion of Bankruptcy is without merit. The Suggestion of Bankruptcy alleges that any debt Valdez owes Trejo was discharged by Valdez's 2009 bankruptcy. The debt Valdez owes to Trejo remains due. Valdez owes Trejo for the funds he holds in trust for Trejo and the sums Trejo expended to defend Trejo's title the Property. A bankruptcy only discharges debts that were incurred pre-petition; therefore a 2009 bankruptcy cannot discharge Valdez's liability to Trejo, which stems from a breach of covenant of title which occurred in July 2019, and payments Trejo made in 2021.

3. This Journal Entry of Judgment supersedes the Journal Entry of Judgment entered by this Court on March 21, 2024, and merges that judgment to form one judgment, entered July 17, 2024. This Court finds the material allegations and legal conclusions stated in Trejo's Motion for Summary Judgment filed on June 06, 2024, are true in all material and substantial respects.

4. Trejo filed his Motion for Summary Judgment on June 06, 2024, Valdez did not respond to Trejo's Motion for Summary Judgment, and the time for responding to the motion has expired. Therefore, pursuant to Rule 4 of the Rules for the District Courts of Oklahoma, the Motion for Partial Summary Judgment is deemed confessed. Further, pursuant to Rule 13 of the Rules for the District Courts of Oklahoma, the affidavits and other evidence presented by Trejo with its Motion for Summary Judgment are sufficient to sustain the material allegations in Trejo's Petition. Defendant's Suggestion of Bankruptcy is not sufficient to defeat summary Judgment. In addition, the Court finds that the affidavit and other evidence presented by Trejo with its Motion for

[Exhibit 5, Page 5 of 19]

Summary Judgment, including Oklahoma County Land Records, receipts, contracts, and financial instruments, show there is no dispute as to any material fact, and that Trejo is entitled to judgment as a matter of law. See, Oklahoma District Court Rule 13(b); **Weeks v. Wedgewood Village, Inc.**, 554 P.2d 780 (Okla. 1976). The exhibits referenced in this motion are the same as those found in Plaintiff Humberto Trejo's Motion for Summary Judgment, filed June 06, 2024.

5. Trejo paid in full for 515 S.W. Grand Blvd., Oklahoma City, Oklahoma 73109 and Trejo is entitled to an order finding Trejo is the owner of 515 S.W. Grand Blvd., Oklahoma City, Oklahoma 73109 in fee simple. On March 11, 2014, Trejo and Valdez signed and executed a certain written Agreement to Sell Real Estate ("Agreement"). A true and accurate copy of the Agreement is attached to Trejo's Motion for Summary Judgment as **Exhibit 2.** Under the Agreement, Valdez agreed to convey to Trejo a residential real property described as:

> Lots Forty-two (42) and Forty-three (43), Block Twenty-five (25), MARKLAND HEIGHTS ADDITION, Oklahoma City, Oklahoma County, Oklahoma, according to the record plat thereof

("the Property").

6. Construed as a whole, the Agreement is a constructive mortgage. A true and authentic copy of the receipts is attached to Trejo's Motion for Summary Judgment as **Exhibit 3.** The Agreement provided Trejo immediate possession of the Property in exchange for a stream of regular payments to Valdez. Valdez retained mere legal record title to the Property as a security instrument to ensure Trejo's compliance with the Agreement. Upon Trejo's full payment of the purchase price for the Property, Valdez agreed to convey the Property to Trejo with a warranty deed. Per the Agreement, the price of the Property was $27,000.00, payable in 62 sixty-two monthly payments of $400.00 and one payment of $200.00. A down payment of $2,000.00 in earnest money was required. Valdez acknowledged full receipt of $2,000.00 in earnest money for the Property. Trejo made 62 payments

of $400.00 to Valdez as evidenced by handwritten receipts, signed by Valdez. On April 19, 2019, Valdez signed and acknowledged a receipt showing a balance of $0.00 remaining for Trejo's purchase of the Property. At that time on April 19, 2019, Trejo was entitled to a warranty deed from Valdez for the Property, as Trejo had paid in full for the Property, entitling Trejo to fee simple ownership of the Property. Per the Agreement, Valdez was required to deliver the Property to Trejo free of any indebtedness on the Property.

7. The Agreement contains covenants of title which are valid and enforceable. Valdez provided a general warranty of title and a covenant of further assurances for Trejo's title to the Property. Oklahoma law recognizes the covenant of general warranty to title by statute. **See 16 Okla. Stat. §19.** Oklahoma law recognizes the covenant of further assurances by case law. **Skelly Oil Co. v. Butner,** 1949 OK 49 ¶14, 201 Okla. 372. Although Trejo's interest in the Property under the Agreement is only equitable, Oklahoma law recognizes that covenants of title attach to equitable interests in real property. **Gilliland v. Clark.** 1951 OK 177, ¶¶18-19, 233 P.2d 288. When a covenant of title is breached, the breached covenant confers rights of action the same as a breach of any other contractual obligation. **Ball v. Coyle,** 1925 OK 101, ¶0, 233 P. 750.

8. In order for Trejo to succeed in his cause of action for breach of warranty of title, he must show that Valdez (1) is a grantor who failed to appear in this action or failed to appear after due notice to defend his warranty and (2) the rights of the parties as determined by this Court are averse to Valdez's warranty. **See 16 Okla. Stat. §24.** Trejo has met the burden of proof for both of the elements described. The evidence of record does not disclose a dispute of any material fact.

9. Valdez qualifies as a grantor for the purposes of Title 16 of Oklahoma Statute Section 24. In Oklahoma, the word "grantor" as contemplated in Title 16 of the Oklahoma statutes must include any person who grants some interest, either equitable or legal, future or present in real

property. **16 Okla Stat. §24.** By operation of law, although Valdez is the current record holder of the Property, his interest is merely that of a mortgage holder. **See Exhibit 1, pages 5 & 18.** Valdez as grantor, conveyed equitable title in the Property, in fee simple, to Trejo to as a purchaser under an executed and completed contract for sale. Trejo has a present right to legal title to the Property by warranty deed under the Agreement. **See Exhibit 2.**

10. Valdez failed to appear in this action to defend Trejo's title to the Property. In this case, Valdez did not appear in these proceedings in a manner sufficient to satisfy his statutory duty to appear. Valdez filed a Suggestion of Bankruptcy. Valdez claimed that the debts in this action were discharged on May 27, 2009. **See Suggestion of Bankruptcy, filed October 29, 2021.** Valdez provided no further explanation for his suggestion of bankruptcy. Valdez has not participated in these proceedings in any capacity since October 28, 2021.

11. Valdez had due notice to defend his warranty. The term appear is not specifically defined in Title 16. **16 Okla. Stat. §14; 16 Okla. Stat. §1 et. Seq.** Under title 25 of the Oklahoma Statues, notice is defined as either actual or constructive. **See 25 Okla. Stat. §10.** Actual notice is an express statement of information of a fact. **See 25 Okla. Stat. §11.** Constructive notice is notice imputed by law to one who does not have actual notice. **See 25 Okla. Stat. §12.** Valdez has both actual and constructive notice of this proceeding. Valdez was served personally with a summons that included a copy of the Petition in this case. **See Summons,** filed February 06, 2020; **see also, Petition,** January 29, 2020. Trejo served a cross claim, alleging Valdez's breach of warranty of title on Valdez personally **See Summons,** filed April 20, 2020; **see also Answer to Petition with Cross Claims,** filed April 02, 2020. The Petition Kruger filed notified Valdez that Kruger was enforcing a mortgage against the Property. **See Petition,** filed January 29, 2020, page 6. Trejo's cross claims alleged that Valdez was liable to Trejo for a breach of covenants of title. **See Answer**

to Petition, with Affirmative Defenses and Crossclaims of Defendant Humberto Trejo, filed April 02, 2020, pages 3-6. Valdez knew he granted a warranty of his own title to Trejo. Valdez agreed in writing to warrant title to the Property and to provide Trejo a warranty deed for the Property. See Exhibit 2, page 5.

12. The rights of the parties, as determined by this Court, show a recovery averse to Valdez's warranty. Trejo, as warrantee here, has a right to a determination of rights in any real property properly subject to a covenant of title. See 16 Okla. Stat. §24. The type of rights that must be determined include real property interests of every nature, legal or equitable, present or future. Covenants of title may generally attach to any interest in real property, including equitable. See Gilliland v. Clark, 1951 OK 177, ¶¶18-19, 233 P.2d 288. Generally, an adverse encumbrance or mortgage is considered a breach of covenant. See 16 Okla. Stat. §24. Therefore, in this case, it is necessary to determine what interests Trejo, Valdez, and Kruger have in the Property, including any mortgages.

13. A review of the Oklahoma County land records shows Valdez had title to the Property subject to a mortgage in favor of Kruger. The Exhibit 1 attached to Trejo's Motion for Summary Judgment is a true and accurate copy of the land record for the Property. At the time of the Agreement, Valdez was the record holder of the Property with his now ex-wife Griselda Valdez née Correa. Valdez and his wife Griselda née Correa divorced in 2014. Under the terms of the divorce, Valdez received title to the Property. Griselda Valdez née Correa conveyed all of her interest in the Property to Valdez, who sold the Property to Trejo by the Agreement.

14. In this case, Trejo has a right to ownership of the Property in fee simple. It is well established rule in Oklahoma that in absence of an express provision indicating the character of title provided for by a contract for sale of real property, a fee simple is intended. 16 Okla. Stat.

**§29.** In this case, Trejo is the holder of a fully executed contract for deed for the Property, the Agreement. **See Exhibit 2, page 5.** The Agreement does not specific which estate Trejo is entitled to receive; therefore, Trejo is entitled to fee simple. In a contract for deed, the buyer does not directly acquire the estate, they acquire an equitable title or interest. **State Life Ins. Co. v. State ex. rel. Kehn,** 1942 OK 385, ¶16, 192 Okla. 271 (1942). The equitable title or interest vests the buyer with rights the owner of the property would ordinarily have. Oklahoma caselaw expressly recognizes the holder of equitable title may sue for quiet title, trespass, and waste for example. **First Mustang State Bank v. Garland Bloodworth, Inc.,** 1991 OK 65, ¶12, 825 P.2d 254 (citing **Asher v. Hull,** 1952 OK 428, ¶24, 250 P.2d 866). Trejo has performed all of the duties under the Agreement in order to entitle Trejo to a warranty deed for the Property in fee simple. **Exhibit 3, page 16; see Affidavit of Humberto Trejo, ¶7.**

15.     The fact that Valdez held bare legal title to the Property does not make him the true owner of the Property. In this case, Valdez allowed Trejo an immediate and continuing right to possess the Property per the Agreement. **See Exhibit 2.** Under the Agreement, Valdez would receive payment of money in return. **See Exhibit 2.** Kruger's interest in the Property is named a mortgage on its face. **See Exhibit 1, page 20.** This Court has already found the same. **See Journal Entry of Judgment,** filed March 21, 2024, pages 2-3.

16.     Trejo's act of purchasing the note and mortgage held by Kruger is sufficient to show a recovery averse to Valdez's warranty of title. When a party warrants a property to be free of encumbrances, the purchaser must not only be able to hold title to the property but hold title in peace. **Catlin v. Aviation Co. Equilease Corp.,** 1981 OK 13, ¶17, 626 P.2d 857. (citing **Tillotson v. Gesner,** 33 N.J.Eq. 313, 327, 6 Stewart 313 (E. & A. 1880). In this case, Valdez warranted the Property would be clear of encumbrances. By promising to deliver a warranty deed and by

promising to remove all indebtedness from the Property, Valdez promised to prove Trejo peaceful ownership of the Property. **See Exhibit 2, pages 1-2.** Valdez failed to clear title to the Property. As a result, Kruger claimed the right to sell the Property at a sheriff's sale which threatened Trejo's peaceful ownership of the property. **See Petition, page 4, ¶8**

17. The fact that Trejo had record notice of Kruger's mortgage does not relieve Valdez of his duty to provide clear title to the Property. The general rule in Oklahoma is that when an encumbrance (e.g. mortgage) is recorded, it cannot be a basis for a breach of covenant. **See Matlock v. Wheeler,** 1956 OK 75, ¶11, 306 P.2d 325. However, that is only the general rule. When the contract to purchase real estate explicitly places the duty on the vendor to clear title to the real property, the vendor's failure to fulfill that duty is not excused merely because the vendee has notice of the defect in title. **See Leche v. Stout,** 1972 OK 142, ¶25, 514 P.2d 1399. The terms of the Agreement explicitly state that Valdez is required to deliver the Property to Trejo free from indebtedness. **See Exhibit 2, page 1.** Therefore, Valdez is nevertheless in breach of covenant of warranty.

18. Trejo is entitled to two kinds of damages. Trejo has suffered damages for breach of warranty of title in the amount of $16,067.92; of this amount, $10,273.00 is held in resulting trust for Trejo. Under Oklahoma law, in an action for breach of covenant of warranty of title, the warrantee is entitled to recover the price paid for the conveyance at the time of the warranty. See 16 Okla. Stat. §24. The warrantee may also elect to retain the part of the real property received by the conveyance and recover the value of the property the warrantee did not receive from the conveyance. **See McConnell v. Goucher**, 1940 OK 444, ¶¶8-9, 108 P.2d 174.

19. First, Trejo has damages for the amount Trejo paid for the title to the Property, but which Trejo did not receive. Valdez is holding these amounts in a resulting trust for Trejo. This amount

8

is $10,273.00. In certain situations, Oklahoma law presumes the existence of a resulting trust. Typically, the evidence required to establish a resulting trust requires clear and convincing evidence, and the burden is on the proponent of the trust to establish it. **Wootton v. Melton,** 1981 OK CIV APP 24, ¶16, 631 P.2d 1337. However, when a transfer of real property is made, the consideration paid for the real property is presumed to be held in a resulting trust for the benefit of the person making the payment. **See 60 Okla. Stat. §137.** The burden then shifts to the opponent of the resulting trust to disprove the existence of the trust. **See Hill v. Hill,** 1983 OK 81, ¶7, 672 P.2d 1149 (citing **Brinkley v. Patton,** 1944 OK 29, ¶¶25-26, 149 P.2d 261).

20.  In this case, Trejo transferred legal title to $10,273.00 to Valdez for the sole purpose of clearing title to the Property. Valdez agreed to make payments for the Property on Trejo's behalf. Trejo provided these funds to Valdez as part consideration for releasing the Property from indebtedness, which is real property. Valdez was supposed to obtain a release of the mortgage held by Kruger with the funds paid by Trejo. **See Exhibit 2, page 1.** Valdez is presumptively holding $10,273.00 in a resulting trust for Trejo. Valdez has not presented any evidence or argument disputing that he is holding funds in trust for Trejo. Therefore, Valdez is hold $20,273.00 in trust for Trejo.

21.  Trejo is entitled to compensation for all sums necessarily expended to protect his interest in the Property. **See 16 Okla. Stat. §24.** Trejo's total actual damages are $16,067.93. **See Exhibit 4, page 4.** The $16,067.93 is made up off two separate types of damages, part held in trust and part stemming from overpayment for the Property. Of this amount, $10,273.00 is held by Valdez in a resulting trust. By arithmetic, the remaining amount of Trejo's actual damages is $5,794.93. These amounts were necessary for Trejo to retain the Property. Kruger claimed the right to sell the

Property at a sheriff's sale which threatened Trejo's peaceful ownership of the property. **See Petition, page 4, ¶8.**

22.     Trejo is entitled to attorney fees, prejudgment interest, post-judgment interest for the full amount of his claims upon motion. By statute, Trejo is entitled to reimbursement for all sums necessarily expended, including a reasonable attorney's fee, and interest at the rate of ten percent (10%) per year from the time of payment. 16 Okla. Stat. §24. Trejo paid $10,273.00 in consideration to Valdez for a release of indebtedness Trejo did not receive. Trejo paid this in a stream of payments, which were ultimately paid in full by April 19, 2019. **Exhibit 3**, page 16. Trejo paid an additional $5,794.93 to Kruger on 07 May 2021. See Exhibit 4, page 10. Trejo is entitled interest accruing at ten percent (10%) per year on these amounts from the date of payment and a reasonable attorneys fee upon motion.

IT IS THEREFORE ORDERED by this Court that Trejo's Motion for Summary Judgment filed June 06, 2024, is **GRANTED** in all respects. Trejo has proven its case against Valdez with the evidence of the Oklahoma County Land Record **(Exhibit 1)**, the Agreement **(Exhibit 2)**, a record of receipts for payments **Exhibit 3**, and a check from Trejo to Kruger **(Exhibit 4)**. The record of evidence also includes Trejo's Affidavit attached to his Motion for Summary Judgment, filed June 06, 2024. This judgment is a **final** judgment.

This Court finds Valdez is holding $10,273.00 for Trejo in a resulting trust. Valdez holds mere legal title to the $10,273.00. Valdez has no equitable right to any of the funds held in trust. Valdez is ordered to turn these funds over to Trejo within (30) thirty days of service of this signed and filed order on Valdez. Trejo is entitled to interest on the $10,273.00 from April 19, 2019, accruing at ten (10) percent per year, plus reasonable attorney fees and costs upon motion. In the event Valdez has converted the funds held in trust into other property, Trejo may sell issue any

executions allowed by law to collect the funds held in trust or on property traceable to the trust funds. Trejo may file a motion to convert the resulting trust into a money judgment if the resulting trust is not returned. The interest accrued, costs, and attorney fees attributable to the resulting trust are also held in trust for Trejo.

The Court grants Trejo judgment against Valdez in the amount of $5,794.93 for breach of covenant of title. These are the funds Trejo was forced to spend to defend his title to the Property. Trejo is entitled to interest on the $5,794.92 from May 07, 2021, accruing at ten (10) percent per year, plus reasonable attorney fees and costs upon motion.

IT IS FURTHER ORDERED Humberto Trejo Dominguez is the owner of the following property in fee simple:

> Lots Forty-two (42) and Forty-three (43), Block Twenty-five (25), MARKLAND HEIGHTS ADDITION, Oklahoma City, Oklahoma County, Oklahoma, according to the record plat thereof

("the Property").

Trejo is the owner of the Property in fee simple free and clear of any liens, claims, or encumbrances of the Defendant Juan Pablo Valdez and successor Plaintiff Kruger Investment Company. Defendant Juan Pablo Valdez and Kruger Investment Company, and their heirs, successors, devisees, and assigns are forever barred from asserting any interest in the Property. This Court orders the Oklahoma County Clerk to accept this order for filing and indexing the name of Juan Pablo Valdez and the Oklahoma County District Court as the grantor of the Property to Humberto Trejo Dominguez as grantee.

**IT IS SO ORDERED.**

DATE:

Anthony L. Bonner, District Court Judge

11

APPROVED:

*/s/ Cody Kerns/*
Charles E. Wetsel, OBA #12035
Cody Kerns, OBA #34697
Richard W. Kirby, OBA #12363
TEAGUE & WETSEL, PLLC
1741 West 33rd Street, Suite 120
Edmond, Oklahoma 73013
Telephone:    (405) 285-9200
Telecopier:   (405) 509-2362 (direct)
email:        cwetsel@teaguewetsel.com
              ckerns@teaguewetsel.com
*Attorneys for Plaintiff*
*Humberto Trejo*

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

NOV 19 2024

RICK WARREN
COURT CLERK
112 _____

HUMBERTO TREJO DOMINGUEZ,

    Plaintiff (real party in interest),

KRUGER INVESTMENT COMPANY,

    (prior Plaintiff),

v.

JUAN PABLO VALDEZ and MRS. JUAN PABLO VALDEZ, ex-spouse of Juan Pablo Valdez, if any; and Mr. and Mrs. John Doe, occupants of 515 S.W. Grand Blvd.,

    Defendants.

Case No. CJ-2020-547
Judge Anthony L. Bonner

### ORDER GRANTING PLAINTIFF HUMBERTO TREJO DOMINGUEZ'S AMENDED MOTION WITH AUTHORITIES FOR ATTORNEY FEES, COSTS, AND INTEREST

This matter comes before the Court on November 14, 2024 on Plaintiff Humberto Trejo Dominguez's Amended Motion with Authorities for Attorney Fees, Costs, and Interest Motion for Attorney Fees and Costs, filed on August 15, 2024. Plaintiff Humberto Trejo Dominguez ("Trejo") requests an order from this Court granting judgment for attorney fees, costs, and interest against Juan Pablo Valdez ("Valdez"). Trejo appears through his attorney of record Cody D. Kerns, Trejo's attorney of record. Valdez did not appear. After considering the amended motion filed by Trejo, the Court finds the following:

On July 17, 2024, this Court entered judgment in favor of Plaintiff Trejo and against Defendant Juan Pablo Valdez for default upon a certain Real Estate Mortgage Note, breach of warranty of title, and resulting trust. The judgment provides Plaintiff Trejo is entitled to reasonable attorney fees and costs and interest against Defendant Valdez.

1

Under Oklahoma law, Plaintiff Trejo, as the prevailing party in an action for a breach of warranty of title is entitled to attorney fees. **See 16 Okla. Stat. §24.** All of the sums Trejo expended establishing his entitlement to a resulting trust were necessarily expended for Trejo's recovery, and therefore are properly allocated to the sums payable by Valdez to Trejo by reason of the resulting trust. All of the sums Trejo paid to acquire the note and mortgage encumbering 515 S.W. Grand Boulevard, Oklahoma City, Oklahoma 73109 ("the Property") were reasonably expended to protect Trejo's interest in the Property. In support of the amended motion for attorney fees and costs, counsel for Plaintiff Trejo attached his affidavit and an itemized report showing the attorney fees Plaintiff Trejo incurred in this matter. The Court considered the applicability of the factors for granting attorney fees, articulated in **State of Oklahoma, ex rel. Burk v. City of Oklahoma City**, 1979 OK 115, 598 P.2d 659. The Court finds the attorney's fees Trejo incurred reasonable for Trejo to recover. For example, this matter involved unusual, if not novel issues of Oklahoma State law.

Plaintiff Trejo, as the prevailing party in this action, is also entitled to recover costs incurred in this matter. **See 16 Okla. Stat. §24.** In support of the amended motion for attorney fees and costs, counsel for Plaintiff Trejo attached his affidavit and an itemized report showing the costs Plaintiff Trejo incurred in this matter. The Court finds the costs reasonable for Trejo to recover.

Plaintiff Trejo is entitled to recover pre-judgment and post-judgment interest at the rate of 10.00% percent per year until paid in full. **See 16 Okla. Stat. §24**. The pre-judgment and post-judgment interest shall accrue on all principle sums paid, costs, and attorney's fees beginning the dates they were incurred or paid at the statutory rate of 10.00 % percent per year. **See 16 Okla. Stat. §24.** Trejo paid the equivalent of $10,273.00 in a stream of payments ended April 19, 2019. This amount was necessary for Trejo to defend his title to real property. The amount of the pre-

[Exhibit 5, Page 17 of 19]

judgment interest attributed to the $10,273.00 judgment is $5,383.96. Trejo paid $5,794.92 on May 07, 2021. This amount paid was necessary for Trejo to defend his title to real property. The amount of prejudgment interest attributed to $1,843.86. The post-judgment interest shall accrue on the principal sums ($10,273.00 and $5,383.96 respectively) at the rate of 10.00 % percent per year until paid in full. Post judgment interest shall accrue on the full amount of attorney's fees and costs awarded in this order beginning November 14, 2024, at the rate of 10.00% percent per year until paid in full.

After considering the evidence and after considering the factors articulated in **State of Oklahoma, ex rel. Burk v. City of Oklahoma City**, 1979 OK 115, 598 P.2d 659, the Court finds and orders that Plaintiff Humberto Trejo Dominguez's Amended Motion with Authorities for Attorney Fees, Costs, and Interest is **GRANTED**, and Plaintiff Humberto Trejo Dominguez is awarded judgment against Defendant for attorney fees in the total amount of **$45,155.50**, and for costs in the amount of **$163.78.** Of these amounts, $28,870.09 in attorney's fees is allocated to Trejo's $10,273.89 judgment; $16,285.41 in attorney fees is allocated to Trejo's $5,794.92 judgment. $104.71 of the costs are allocated to Trejo's $10,273.00 judgment and $59.07 of the costs are allocated to Trejo's $5,794.92 judgment. Trejo is entitled to post-judgment interest on the entire principal sum, outstanding attorney's fees, and costs at the rate of 10.00 % percent per year until paid in full. All sums collected and paid by Juan Pablo Valdez, or otherwise shall first apply to pay the $5,794.92 judgment, including its attorney fees, costs, and interest until payment in full or the underlying $5,794.92 judgment becomes no longer due or owed. Trejo is entitled to additional attorney's fees, costs, and interest for all post-judgment collection activities.

**IT IS SO ORDERED.**

Nov. 19, 2024

Anthony L Bonner, District Judge

NOV 19 2024

CERTIFIED COPY AS FILED OF RECORD IN DISTRICT COURT

RICK WARREN COURT CLERK Oklahoma County

3

[Exhibit 5, Page 18 of 19]

APPROVED:

*[signature: Cody Kerns]*
_____
Charles E. Wetsel, OBA #12035
Cody D. Kerns, OBA #34697
Teague & Wetsel, PLLC
1741 West 33rd Street, Suite 120
Edmond, Oklahoma  73013
Telephone:    (405) 285-9200
Telecopier:    (405) 509-2362 (direct)
e-mail: cwetsel@teaguewetsel.com
           ckerns@teaguewetsel.com
*Attorneys for Plaintiff,*
*Humberto Trejo*


_____
Juan Pablo Valdez
*Defendant, Pro se*

4